GEORGE A. FOSTER, Respondent, v. KANSAS CITY, Appellant.

**Kansas City Court of Appeals, December 4, 1905.**

1. **ROADS AND HIGHWAYS: Defects: Liability: County Court.** The county court is invested by law with control over the highways in its county, not as an agent of the county, but as an instrumentality of the State government, and the county is not liable for damages arising from defects in such highways, and the injured party is without remedy, though the victim of wrong.

2. **MUNICIPAL CORPORATIONS: Extension of Territory: Streets: Liability for Defects.** When a city, by the extension of its bounds, takes in a state road, it accepts the burden of maintaining it as a public street and does not inherit the state's immunity from liability for defects. [Downend v. Kansas City, 156 Mo. 60, contrasted.]

3. ————: ————: **Legislative Act: Streets.** Such extension is in no sense ministerial but the act of the legislative branch of the municipal government, which is vested with power to impose burdens upon the city in regard to its public streets.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans,* Judge.

AFFIRMED.

*R. J. Ingraham* and *J. J. Williams* for appellant.

The court should have given the instruction in the nature of a demurrer asked by the defendant at the close of plaintiff's testimony, for the reason that such testimony failed to show that the defendant was responsible for the condition of Fifteenth street at the place of the accident, or that it was its duty to keep such street at that place in a reasonably safe condition. Downend v. Kansas City, 156 Mo. 60; Carle v. De Soto, 156 Mo. 443; Thrush v. Cameron, 21 Mo. App. 394; Baldwin v. Springfield, 141 Mo. 205; Johnson v. St. Joseph, 96 Mo. App. 663.

*A. N. Adams* and *Scarritt, Griffith & Jones* for respondent.

Defendant's demurrer to the evidence was properly refused.

JOHNSON, J.—Plaintiff sued defendant city for damages resulting from injuries sustained in being thrown from his wagon while driving along a street alleged to be one of the public thoroughfares of said city. The accident was charged to have been caused by one of the wheels of his wagon striking a telegraph or telephone pole lying in the macadamized roadway, the presence of which pole was concealed from view by a covering of snow. The trial resulted in a judgment for plaintiff and the case is here on defendant's appeal. The injury occurred on Fifteenth street near its intersection with Crystal avenue, about five miles from the central portion of the city and a few blocks within its limits. The street had been graded its full width (one hundred feet) and its midway paved with macadam to a width of sixty feet, some time before it was included within the city's boundaries by an extension thereof, which was accomplished in 1897. This work had been done under the authority of the county court, while the way then, as well as now, the principal thoroughfare connecting defendant city with Independence, was under its control. There was much travel along the street both before and after its absorption by the city, but, after that event, no repairs were made upon it, nor was any physical act performed by the city in the exercise of jurisdiction over it.

But one serious question confronts us in this case: Was the city at the time of the injury burdened with the duty of keeping the street in a reasonably safe condition for travel? An affirmative answer must be predicated upon these facts alone: first, the inclusion of the highway within the municipality by the extension of

its limits; and second, the act of the city in permitting the street to remain open to travel and its continued use by the public. It is argued by defendant that these facts neither singly, nor conjointly, operate as an acceptance of the highway as such by the city, and, therefore, no duty devolved upon defendant to maintain it as a public street and keep it in a reasonably safe condition for use. The case of Downend v. Kansas City, 156 Mo. 60, is chiefly relied upon to sustain this position. In that case, the plaintiff attempted to hold the city liable for damages resulting from personal injuries sustained by her from a defect in a street which had been dedicated to the city but had not been formally accepted, and over which the city had exercised no physical control. It was contended that the approval by the city of the plat filed and the use of the street by the public constituted an acceptance, but the court held that the approval of the plat was a ministerial, not a legislative act; that "the sole purpose of requiring plats to be submitted to and approved by the common council of a city was to secure systematic prolongations of its streets, and thus conform to the plan upon which the city was laid out;" that, when this requirement of the law was complied with by the owner, the city was bound to approve the plat whether it wished to or not, and that such approval was in effect nothing more than a certification that the plat conformed to the law and that it was, in no sense, to be regarded an acceptance of the street as a public highway, nor as casting upon the city the duty of keeping it in repair. It was further held that user by the public was not an act of the municipality and, therefore, not of itself binding upon the city; and the basic principle underlying that decision is that it requires a voluntary, not a compulsory nor perfunctory act of the city to bind it as an acceptor of the street. The legislative branch of the municipal government must be accorded fair exercise of the right to determine what burdens the city will assume

and, neither the public through the act of using the street, nor the owners of additions by filing plats and dedicating streets, can impose burdens upon the city in disregard to the will of constituted authority.

But these principles do not aid the contention of defendant in the case before us. We are not dealing here with a street on paper, but with an actual highway, for years maintained by the State through its instrument, the county court. It was a recognized public road and a duty rested upon the county court to keep it in condition for use. True, no action lies for damages sustained by an individual on account of a breach of such duty, but that is because a county court is invested by law with control over the highways in the county, not as the agent of the county, but as an instrumentality of state government. Consequently, a county as a quasi corporation is not charged with the performance of any duty to maintain the highways and cannot be held liable for damages resulting from defects in them. [Reardon v. St. Louis County, 36 Mo. 555; Swineford v. Franklin County, 73 Mo. 279; Clark v. Adair County, 79 Mo. 536; Pundman v. St. Charles Co., 110 Mo. 594; State ex rel. v. Court, 142 Mo. 575.] A person injured on a state road by a defect therein, existing from a neglect to repair, is without a remedy for he cannot sue the State nor its instrument, the county court, but he, nevertheless, may be a victim of wrong and that wrong a breach of duty imposed by law upon the county court.

It will be seen that we are met with an essential difference between a case arising from an injury sustained upon a dedicated, but unoccupied street, and one involving the question of liability for an injury sustained upon a recognized highway taken into the city by an extension of its limits. In the one, no duty has devolved upon anybody to maintain the way in condition for use; while, in the other, until the fact of territorial integration is accomplished, that duty exists in the county court and the question is what becomes of

it after that body has been divested of control over the road. If we were to follow the reasoning of defendant, we would be compelled to say that all duty ended with the transfer of jurisdiction to the city and remained in abeyance until the city government chose, by ordinance or some equivalent act, to recognize the road as one of its public streets. That is to say, the city could for an indefinite time, by leaving the road open to travel, continue the invitation to use it extended by the State to the public without being under any sort of duty to maintain it in a reasonably safe condition. In order to excuse the city from liability, we necessarily must hold it free from duty, for a municipal corporation, in accepting the burden of maintaining as a public street a state road taken in by an extension of its territory, does not inherit the State's immunity from liability. We do not approve the argument of defendant. The very act of municipal expansion followed by the implied invitation to the public to continue the use of the highway carried along the assumption of authority and its concomitant duties. These acts themselves converted the road into a city street and the duty of the county court to keep it in repair was immediately superseded by that of the city, and, for a negligent breach of this duty resulting in injury to one rightfully upon the street and acting with due care, the city must be held liable for the damages sustained thereby.

Moreover, the extension of the city limits was in no sense a ministerial act. It resulted from the exercise of the legislative authority of the city (Revised Statutes 1899, section 6399), the branch of municipal government, in which alone is vested by law the power to impose burdens upon the city with respect to the establishment and maintenance of its public streets.

Bearing in mind the differences between the essential features of the case before us and those appearing in the Downend case, we do not hesitate to say that the principles there followed, when applied to the case in

hand, serve to hold the city liable. All of the facts which the court there pronounced essential to the imposition of duty, are here present. Embracing all of them in an antithetically comparative summary of the two cases, we find that in the Downend case the only act of the city was ministerial, while here its acts were governmental; there, the city had expressed no purpose to assume jurisdiction over the street; here, by ordinance duly passed, it voluntarily assumed control over the road (Revised Statutes 1899, section 6408); there, no invitation, either express or implied by any constituted authority, was ever given the public to use the street; here, by leaving open to travel a road, over which the city assumed express control, the public was invited to continue the use it enjoyed under implied invitation from the State. The question must be decided adversely to the contention of defendant.

Other points are made by defendant, but a careful examination of the record convinces us that the case was fairly tried and submitted. The judgment is affirmed. All concur.