## CITY OF MIAMI v. FINLEY.

No. 15751—Opinion Filed Sept. 29, 1925.

1. Notice—"Constructive Notice."

Evidence of constructive notice presents a question of fact for the jury to determine, and is sufficient if reasonable time is shown in which the party charged could have known the thing complained of by the exercise of reasonable care and diligence.

2. Municipal Corporations—Liability for Dangers Near Sidewalk Proper.

The rule that requires a municipal corporation to exercise ordinary care to know the condition of its sidewalks and keep them in a reasonably safe condition for such use (Bellevue Gas & Oil Co. v. Carr, 61 Okla. 290, 161 Pac. 203) is not to be confined solely to the sidewalk track, but is to be extended to dangers near or in proximity to the sidewalk.

3. Appeal and Error—Questions of Fact— Verdict—Value of Prospective Services of Minor Child.

The value of prospective services of a minor child during its minority is a question of fact for the jury, under the proper instructions of the court, and where the jury determines the question by their verdict and there is any competent evidence tending reasonably to support the verdict, the same will not be disturbed on appeal.

4. Damages—Personal Injury to Infant— Prospective Damages from Impaired Earning Capacity.

Prospective damages to an infant, however young, on account of impairment of earning capacity after the age of majority, and to the parent during minority, or in case of death, for a longer time, is a proper element of damage in a case of personal injury, and the rule applies although the minor has never earned anything, and although no one can tell with any certainty what his earning capacity will be.

5. Municipal Corporations— Negligent Condition of Sidewalk—Instructions.

The instructions complained of, quoted in the opinion, were held to fairly state the law applicable to the case, and sufficiently clear to guide the jury in considering the question of negligence.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by Leo J. Finley against the City of Miami, Okla. Judgment for plaintiff, and defendant appeals. Affirmed.

N. C. Barry, for plaintiff in error.

Frank Nesbitt, for defendant in error.

Opinion by THREADGILL. C. This action was brought to recover damages for the death of a girl child two years of age, caused by an uncovered water meter box located near the cement sidewalk on the parking between the sidewalk and the traveled street, into which the child fell head foremost and was drowned.

Plaintiff alleged that the said water box and meter were used by the defendant to sell and measure water to his customer, a resident of the city, who lived on the adjoining lot to plaintiff, and same was under the control of defendant, and the said water box was negligently left uncovered by the defendant, and said negligence was the proximate cause of the child's death, and resulting injury to plaintiff. The damages were alleged to be the loss of earnings of said child from 8 to 17 years, inclusive, in the sum of $8,040, and $200 as burial expenses, and the amount prayed for was $6,440.

Defendant answered by general denial and specially denied any negligence on its part as alleged by plaintiff's petition, and by pleading contributory negligence on the part of plaintiff, in permitting said child to "run over and about the streets of Miami, Okla., unrestrained and uncontrolled". These issues were tried to a jury March 19, 1924, and resulted in a verdict and judgment for plaintiff in the sum of $2,500, from which judgment defendant has prosecuted this appeal by petition in error and case-made.

1. Defendant's first contention is that the evidence was not sufficient to prove that it had notice of the uncovered water meter box, and therefore the court committed error in overruling its demurrer to the evidence, and in refusing to give its requested instructions for a verdict in its favor, and in overruling its motion for a new trial. To determine whether or not defendant's contention is correct requires an examination of the record as to what the evidence shows. The facts were substantially as follows: Plaintiff with his family, consisting of his wife and three children, the eldest child being six and the youngest two years of age, lived in a house on A street, southwest Miami, and had been living there about eight months at the time of the accident complained of. On the adjoining lot lived Robert Tuthill with his family. The lots were about 50 feet wide, the sidewalk in front was made of cement, and the street was a paved street, and the parking between the sidewalk and street was about nine feet, and the water meter box was an open cemented hole in the ground, the top of which was on a level with the ground, and the same was 18 to 24 inches long, 16 to 18 inches wide, 2½ to 3 feet deep, situated within 2½ to 3 feet of the public sidewalk, and within 6 to 6½ feet of the paved street, within one-half block of the public ward school, within one block of Main street, within three blocks of the principal business center of the city, within three blocks of the residence of the superintendent of streets of the city, and under these circumstances had remained open without a cover for about eight months. There was some conflict in the evidence as to whether or not there was any sort of covering used for the box. Some of the witnesses, who testified they saw it often, said there was no covering, while the water meter reader said there was a board which was used in covering it partially. There was a low place in the sidewalk in front of the said water box, and it had rained the night before the accident complained of, and water had set-

tled in the low place, and it appears that the water meter box was partially filled with water. The child was following her two sisters who had run across the street, and it appears that in avoiding the water on the sidewalk, she fell into the meter box on the parking and was drowned.

It is contended that the knowledge of the water meter reader was not notice to the city since no duty was imposed upon him of keeping it in repair. He was only employed to read the meter and report the same to the proper authority, but it makes no difference whether this knowledge is imputed to the city or not, since it is the law in this jurisdiction that considerable time in such a case would have the same force and effect in binding the defendant as actual notice. In the case of the Town of Norman v. Teel, 12 Okla. 69, 69 Pac. 791, the rule is stated as follows:

"The sufficiency of notice to fasten liability upon a city for a defective sidewalk is a question of fact to be determined by a jury under all the circumstances surrounding the particular case. It is not essential that the corporation shall have actual notice. If the defective condition of the street or sidewalk has existed for such a period of time that by the exercise of ordinary care and diligence the city authorities could have repaired the defect, and placed the street or sidewalk in a reasonably safe condition, and it fails to do so, then it is liable for any injuries that may be occasioned thereby by reason of such negligence, provided the injured party was in the exercise of ordinary care."

Again in the case of City of Cushing v. Bowdlear, 74 Okla. 138, 177 Pac. 561, the rule is stated as follows:

"It is not necessary that a city have actual notice of the condition of its streets. It is sufficient that the defective condition of the street had existed for such a period of time that the city, by the use of ordinary care, could have discovered the same."

See, also, Tulsa v. Wells, 79 Okla. 39, 191 Pac. 186; City of Lawton v. Hills, 53 Okla. 243, 156 Pac. 297. These same cases hold that whether or not the notice to the city is sufficient is one of fact for the jury under the evidence in the case. Under these authorities, applied to the evidence in the case at bar, we think the defendant had sufficient notice of the condition of the water meter box to render it liable for the injury complained of.

2. In the next place defendant contends that it did not own the water meter box and that same was not on the sidewalk prepared for pedestrians, nor on that part

of the street usually traveled by vehicles, but on the parking, which was not set apart for traveling, and therefore it should not be held liable. We cannot agree with this contention. The rule that requires a municipal corporation to exercise ordinary care to know the condition of its sidewalks, in respect to their safety for ordinary proper use, and keep them in a reasonably safe condition for such use (Bellevue Gas & Oil Co. v. Carr, 61 Okla. 290, 161 Pac. 203), is not to be confined solely to the sidewalk track, but is to be extended to dangers near or in proximity to the sidewalk. In the case of Oklahoma City v. Meyers, 4 Okla. 686, 46 Pac. 552, the rule is stated as follows:

"If a dangerous excavation is in such close proximity to the sidewalk as to make traveling on it dangerous, it matters not to the person injured that is may not have been within the limits of a street. The safety of the traveler is what the law seeks to protect and if he had the right to the use of the street, he may presume that the authorities in control have provided a safe place for travel. It cannot be said that a safe place for travel has been provided if abutting the sidewalk or in close proximity thereto there is permitted a deep excavation which even the most careful of passenger would be in danger of falling into."

This holding of the court was based upon the authority given the city council and duty imposed upon its officers to exercise control of its streets and sidewalks, and keep them free from obstructions and reasonably safe for the traveling public, as provided in section 27, ch. 14 of the act relating to cities, being section 4563, Comp. St. 1921, and of the statutes of a similar nature. See, also, De Long v. Oklahoma City, 47 Okla. 398, 148 Pac. 701, and 13 R. C. L., page 425, par. 348. We must, therefore, conclude that it would make no difference whether the defendant owned the water box or not, it was placed on the parking of the street by authority of the city, and was under the control of the defendant and subject to its street and sidewalk jurisdiction, and it must be held liable for its reasonably safe condition in its relation to the traveling public.

3. Defendant further contends that the evidence was not sufficient to sustain the judgment as to the damages measured by the child's service from the age of 8 to 17 years inclusive. The evidence on this question was by the plaintiff's father who had raised several children. He testified that the services of a child 8 years old, in good health, were worth $15 per month, and increased $5 per month up to the age of 15, and at 15 the service should be $40 per month, and

at 16, $50 per month, and at 17, $55 per month, making for the ten years, $4,020. It is true the witness did not claim to have any actual experience in employing children or hiring them out, but he knew what services they were capable of rendering and the reasonable value of same. Common knowledge was sufficient to warrant this testimony. Defendant offered no evidence to the contrary. The jury found a sum far less than plaintiff asked for in the petition, and even less than the testimony of the witness showed the services were worth, and since we find the evidence of the witness reasonably tended to support the judgment as to the value of the child's services and damages awarded, this court will not reverse the judgment for lack of mathematical certainty as to the loss sustained.

4. Defendant further contends that it is very doubtful as to whether or not a parent should be permitted to recover for loss of services of a child who dies before old enough to perform services, and cites us to the rule laid down in 29 Cyc. 1639, which is as follows:

"While it has been held that where a child is at the time of the injury too young to perform any services and is cured or dies of the injury before it reaches the age to perform services, there can be no recovery. A better view and that supported by the weight of authority is that in such case the parent is entitled to recover for his expenditures in the care and cure of the child."

It may be conceded that the old cases held to this rule. (Allen v. Atlanta St. Ry. Co., 54 Ga. 503; Grinnell v. Wells, 2 D. & L. 610, 8 Jur. 1101, 14 L. J. C. P. 19, 7 M. & G. 1033, 8 Scott N. R. 741, 49 E. C. L. 1033); but the trend of the holding in the more modern cases is against this rule. The case of Rosenkranz v. Lindell Ry. Co., 108 Mo. 9, 32 Am. St. Rep. 580, was an action for damages for injury by street car to a child four years of age, and the court lays down this rule:

"Prospective damages to adults on account of impairment of earning capacity in the future is a proper element of damages in a case of personal injury. So in such case the jury may take into consideration loss of earnings of an infant four years old, after he shall have attained his majority, though he has never earned anything and though no one can tell with any certainty what his earning capacity will be."

Many cases are cited in the body of the opinion from the Missouri court, one from the Georgia court, two from Illinois court, and one from Texas court, in support of the rule. It is true this rule is laid down in a case

where the action was brought in favor of the injured child, while the one at bar is for damages to the parent for loss of prospective wages of the child. But the principle in both cases is the came. See, also, Binford v. Johnson, 82 Ind. 436, 42 Am. St. Rep. 508. Our court seems to be committed to the same rule. In the case of Weleetka Cotton Oil Co. v. Brookshire, 65 Okla. 293, 166 Pac. 408, this court · says:

"The loss a man suffers by the death of a relative may be the loss of something which he was legally entitled to receive, or may be the loss of something which it was merely reasonably probable he would receive. The first description of loss is principally confined to a husband's loss of his wife's services, a wife's loss of her husband's support and services, a parent's loss of the services of a minor child, and minor child's loss of the support of a parent. But the statutes do not confine the benefit of the action to husbands, wives, minor children, and parents of minor children, and hence a person entitled to the benefit of the action may recover damages for the loss of pecuniary benefit to which he was not legally entitled and which it is reasonably probable he would have received, except for death. The second description of loss includes the loss by the beneficiary of any pecuniary benefit which he might reasonably be expected to have received during the lifetime of the deceased by gift, and also the loss of any accumulation which it is probable that the deceased would have had added to his estate had he lived out his natural life, and which the beneficiary would probably have received by inheritance."

We, therefore, conclude that it is the law of this jurisdiction, as well as the trend in general of the courts of the various states, that loss of prospective earnings of infants is subject to be recovered as damages when the injury is caused by the negligence of another, by the infant itself where it survives, and by the parent up to the infant's majority, and in case of death for a longer time.

5. Defendant further contends that the court committed error in giving instructions Nos. 11 and 12, which are as follows:

"No. 11. Plaintiff alleges in his petition that the defendant city was negligent in the following particulars, that is to say, that on April 28, 1923, Betty Lou Finley, the infant daughter, two years of age, of the plaintiff herein, while walking along and over the sidewalk and curbing in front of the residence of one Robert Tuthill on one of the principal residence streets in and of the said city of Miami, Okla., without fault on her part, fell into a water meter box in which was located, kept and owned and maintained, in connection with its municipal water system, a meter of said defendant herein and which said box was at said time filled with water, with the result that said child was drowned. That said meter box in question was located in close proximity to the sidewalk and on a public curbing and the top thereof was level with the surface of the ground so that its presence was not easily discovered and that notwithstanding the fact that the defendant city, through and by its agents, read the meter located in said box for many months prior to said date and well knew its dangerous condition, said defendant carelessly and negligently permitted said box to be and remain uncovered and open, and that as the direct and proximate result of such negligence on the part of said defendant city, said child fell into the open and uncovered box and met her death as aforesaid. You are instructed by the court that unless you find and are satisfied from the fair weight and preponderance of the evidence in the case, that the said Betty Lou Finley met her death as alleged by plaintiff in his petition, and that one or all of these matters and things hereinabove enumerated and alleged by the plaintiff in his petition as negligence on the part of the said defendant city, was or were the direct or proximate cause of her death, then the plaintiff would not be entitled to recover in this case and your verdict should be against him and in favor of the defendant. If, however, you find and are satisfied from the fair weight and preponderance of the evidence in the case that said child met her death at the hands of said defendant as alleged by plaintiff in his petition, and that one or all of these matters and things hereinabove enumerated and alleged by plaintiff in his petition, as negligence on the part of said defendant was or were the direct or proximate cause of the death of said child and that the plaintiff was not guilty of contributory negligence upon his part as alleged and set forth in the answer of the defendant herein, then and in that case the plaintiff would be entitled to recover and your verdict should be in his favor and against the defendant."

"No. 12. You are instructed that it was the duty of the defendant city to keep its walk and the meter box in question, situated as it was, in a reasonably safe condition, for the use of the public in the ordinary and customary use of said walk at such place, and, if necessary to render said premises safe, as aforesaid, it should have properly covered or otherwise protected said meter box so as to render it reasonably safe. Before, however, the defendant herein would be liable for damages or could be chargeable with negligence, in failing to keep and maintain in a safe condition such premises it must have had notice as elsewhere defined to you, either actual or constructive, of such dangerous condition, if any in fact existed."

We think these instructions fairly stated

the law of the case and were sufficiently clear to guide the jury in considering the question of negligence. We do not think there is any merit in the criticism of the defendant of these instructions. Upon the whole record, we think, the defendant had a fair trial, and the judgment of the court should be affirmed.

By the Court: It is so ordered.